SAMSON v. BLAKE. See Case No. 2,802.

---

## Case No. 12,285.

### SAMSON v. BURTON.

[5 Ben. 325;[1] 4 N. B. R. 1 (Quarto. 1).]

District Court, D. Vermont. June, 1870.[2]

FRAUD—COLLUSION — ENJOINING PROCEEDINGS IN STATE COURTS.

1. B. & C., who were brothers-in-law, had been friendly till 1860. In that year disputes arose between them. B. sued C. in assumpsit, and attached C.'s property to the value of $10,000. C. also sued B. in assumpsit, demanding $75,000. In this suit B. filed a declaration in offset in 1861, claiming $70,000. In 1867, B. sued C. in an action on book account, and attached C.'s property to the amount of $150,000, this attachment being subject to B.'s previous

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
2 [Affirmed by circuit court. Case unreported.]

attachments, and to two other attachments by other parties. In 1868, the suit of C. against B. was tried, and resulted in a verdict of about $46,000 in favor of the defendant B. on his declaration of set-off; but this judgment was, in January, 1871, on consent of B., reversed, and a new trial ordered. In 1868 and 1869, attachments in favor of other parties were levied on the property of C. to the amount of over $100,000, and on February 19th, 1870, a petition in involuntary bankruptcy was filed against C., under which he was adjudged a bankrupt, and an assignee was appointed. On February 18th, 1870, B. and C. made a collusive agreement in writing that the suit by C. against B. should be nonsuited, that two other suits between them should be discontinued, and that the claims involved in them should be transferred to B.'s action of book account against C. The assignee in bankruptcy filed a bill, praying for an injunction against B., to prevent him from proceeding with his suits against C., and praying that this court would order that the controversies in those suits be heard and determined in this court. Held, that this court had no authority to withdraw those suits from the state court.

[Cited in Hewett v. Norton, Case No. 6,441. Claflin v. Houseman, 93 U. S. 134.]
[Cited in brief in Brandon Manuf'g Co. v. Frazer, 47 Vt. 89.]

2. The assignee was entitled to be admitted as a party to those suits, in place of C., and C. must also be enjoined from interfering with those suits.

3. The agreement between B. and C., the effect of which was to transfer to the action of book account all B.'s claims which had been litigated in the action of assumpsit, for the purpose of sheltering any sum that B. might recover under the lien of his attachment, was an agreement which was in fraud of the bankruptcy act.

[Cited in Re Jacobs, Case No. 7,159.]

4. Although this court would not restrain the prosecution of the suits in the state court, it would restrain B. from using in any manner the agreement in question.

5. Any creditor of C. could be prohibited from taking out execution in the state court, and levying it on the property attached, until the assignee should have time to discharge the attachment liens, if he saw fit.

[Cited in Doe v. Childress, 21 Wall. (88 U. S.) 646.]

[This was a bill in equity by Amos J. Samson, assignee of Alanson M. Clark, against Oscar A. Burton, the Franklin County Bank, and Carlos C. Burton.]

SHIPMAN, District Judge. This is a suit in equity, praying, for reasons set forth in the bill, this court to restrain the defendants from proceeding with certain suits now pending in the state courts of Vermont, in which the defendants are severally parties on the one side, and Clark, the bankrupt, is a party on the other, and also praying that this court direct that the controversies involved in the suits thus pending in the state courts be heard and determined in this court under such issues as this court shall order. For a clear understanding of the questions now to be decided, it will be necessary to give a brief history of the litigation pending in the state tribunals, which this court is now asked to arrest.

The bankrupt, Alanson M. Clark, and the defendant, Oscar A. Burton, are brothers-in-law, and prior to the year 1860 were on friendly terms, and had business transactions together; but during that year disputes arose between them, and they both resorted to the state courts. Among the suits instituted by the parties that year, was one by Oscar A. Burton against Clark, in which his property was attached to the value of ten thousand dollars, one by the Franklin County Bank, a corporation in which it is said that Oscar A. Burton owned a controlling interest, against Clark, in which his property was attached to the value of five thousand dollars, and one by Clark against Oscar A. Burton, demanding seventy-five thousand dollars. These were all actions of assumpsit.

In 1862, the controversies between Clark and Burton were, by mutual agreement submitted to three arbitrators, the suits still remaining in court without any action being taken in them by either party. The claims of the parties were contested before the arbitrators from time to time, down to the year 1867, when one of the arbitrators died before a conclusion was reached, thus terminating the submission. The litigations were then reopened in the courts, and though Burton had, as early as 1861, in the action of assumpsit which Clark had brought against him in 1860, filed a declaration in offset containing the common counts, setting up a claim of seventy thousand dollars, yet, on the 26th of August, 1867, he commenced a suit known in Vermont as an action of book account, in which he demanded one hundred and fifty thousand dollars as justly due him from Clark to balance book account between them. The direction in the writ was to attach to the value of one hundred and fifty thousand dollars, and an attachment was actually levied upon all Clark's property, amounting to a hundred thousand dollars, more or less. This attachment was of course subject to the preceding ones in favor of Burton and the Franklin County Bank, and also to one by Carlos C. Burton, in a suit brought by him against Clark, in March of the same year. It was also subject to one or more prior mortgage liens. In the mean time Clark proceeded with his action of assumpsit against Oscar A. Burton, and the same was brought to trial at the April term of the Franklin county court in 1868, and resulted in a verdict of about forty-six thousand dollars in favor of the defendant on his plea or declaration of set-off. This cause was then carried to the supreme court on a bill of exceptions, where it remained until the January term of the latter in 1870. At that term a motion was made by Clark's counsel to continue the cause till the next following term, in January 1871.

It is unnecessary to detail the reasons set forth on behalf of Clark in support of this motion for a continuance, but it was strenuously insisted by both Clark and his counsel in their affidavits, that the judgment in favor of Burton ought not to stand, and that the same would be reversed by the supreme court if the case could be fully presented by the plaintiff. Thereupon Burton entered his consent, that the same should be reversed, and it was reversed and a new trial ordered. The case was of course remanded to the county court, where it now stands.

To the action of book account brought by Burton against Clark, in August, 1867, demanding one hundred and fifty thousand dollars, the latter filed a plea in abatement, alleging as grounds of abatement that the matters intended by Burton to be determined in that suit, had been set up by him as defendant in the action of assumpsit brought by Clark against him, and were therefore then pending in that suit. This plea in abatement was overruled, to which ruling the defendant excepted and auditors were appointed to adjust the accounts between the parties, and report to the court, as is customary in actions of this character, which, it may be remarked here, are peculiar forms of suits in use in Vermont and Connecticut and nowhere else. The parties appeared before the auditors on the 18th of May, 1869, when the hearing was adjourned, on motion (of which party does not appear), to the 12th of July, 1869, when the parties appeared again, and on motion of the plaintiff the hearing was further postponed to the 19th of July, 1869. The parties appeared on the last named day, and the plaintiff then moved to postpone the hearing till after the then next term of the supreme court for Franklin county. This motion was supported by a long affidavit of the plaintiff, detailing certain alleged facts which need not be recited here. The auditors overruled this motion, and refused to further postpone the hearing, directing that the same should then be proceeded with. Neither party presented any account for adjudication. The auditors made their report to the court at its next term, on the second Tuesday of September following. In their report they recited their action in postponing the hearing to the 19th of July, their denial of the plaintiff's motion to postpone made on that day, and the fact that the parties declined to present any accounts. They then report nothing due either party to balance book accounts, and leave the matter for such action as the court might deem proper for the protection of the rights of the parties. To this report the auditors annexed a copy of the plaintiff's affidavit, presented to them in support of his last motion for a further postponement.

At the same time, and on presentation of this report, the plaintiff moved "for reasons apparent on said report, and the papers thereto annexed and referred to," that the cause be recommitted to the auditors. This motion was granted by the court, to which ruling the defendant excepted. In this condition that cause now stands.

There were also two suits in chancery, one

brought by Oscar A. Burton against Clark and Bradley Barlow, and one by Clark against O. A. Burton. The one against Clark and Barlow was to restrain the transfer or collection of five seven-thousand-dollar notes, amounting in all to thirty-five thousand dollars, and dated February 1st, 1860, which were originally given by Oscar A. Burton to Clark, and by him indorsed before due to Barlow, Burton claiming that they were accommodation notes without consideration, and that Barlow took them with knowledge of that fact. The other chancery suit was one brought by Clark against Burton, and had reference to the same subject-matter.

It is conceded that the claims respectively set up by the parties in these suits were, from their commencement, the subject of a protracted, bitter and severely contested litigation, each insisting that the demands of the other were unfounded and fraudulent. This hostile and uncompromising attitude of Clark and Burton toward each other apparently continued down to January, 1870.

But though Clark was, during all this time the owner of a large and valuable real estate, and considerable personal property, suits from other quarters accumulated against him. During the years 1868 and 1869, actions to the number of nearly twenty were commenced against him in the courts of the state, upon which his property was attached to the amount of over one hundred thousand dollars. The last attachment levied, which the evidence discloses, was on the 7th December, 1869. On the 19th February, 1870, a petition was filed in this court against Clark in involuntary bankruptcy, and after a trial by jury, he was, on the 9th March, adjudicated a bankrupt, from which an appeal was taken and is now pending in the circuit court. The assignee was duly appointed, who has instituted this suit.

On the 18th February, 1870, the day before the petition in bankruptcy was filed, Clark and Burton executed the following agreement: "This agreement, made this 18th day of February, 1870, between Oscar A. Burton, of Burlington, in the county of Chittenden, and Alanson M. Clark, of St. Albans, in the county of Franklin witnesseth: 1. The suit now pending in the Franklin county court in favor of said Clark against said Burton is to be nonsuit, without costs, at the next term of said court. 2. The suit in chancery now pending in Chittenden county, in favor of said Burton against said Clark and Bradley Barlow, is hereby discontinued without costs. 3. The suit in chancery now pending in Franklin county, in favor of said Clark against said Burton is hereby discontinued without costs. 4. In the action of book account now pending in Franklin county court in favor of said Burton against said Clark, wherein Timothy P. Redfield, Homer W. Heaton, and Silas P. Carpenter are auditors, the said parties may file all the claims, included in their specifications in the suit in favor of said Clark above named, and which is hereby agreed to be entered nonsuit. And the said Clark may also file in said action his five promissory notes, each dated February 1st, 1860, and no objection shall be made by either party, to the determination of any of said claims by said auditors. And it is further agreed, that the statute of limitations shall not be a bar or defence to said claims, or any of them, on either side, but that the auditors in said case, shall hear and determine said claims upon their merits, under the proofs to be submitted to them. (Signed,) A. M. Clark. O. A. Burton."

This agreement is charged in the bill to be collusive and fraudulent, and it is averred that in any respect in which it can be viewed, it is in fraud of the bankruptcy act, intended to give an illegal preference to Burton over the creditors of Clark, and that if carried out, such will be its inevitable effect. The answer of Burton denies the alleged fraud and collusion, and insists that the agreement confers no right or advantage upon him, Burton, which was not legally his by virtue of the proceedings taken in the state courts, prior to the making of the agreement. There are other allegations in the bill and answer, which need not here be recited. In brief, the theory of the plaintiff, who represents the general creditors of the bankrupt is, that the agreement is part of a scheme concocted by Burton and Clark, by which the former, under cover of the action of book account, and the attachment therein pending in his favor against Clark, intends to appropriate all Clark's property, and thus secure a fraudulent preference over the rest of the creditors of the bankrupt. The defendant, Oscar A. Burton, insists that the agreement does not enlarge his legal rights, as they were fixed, and stood long prior to the four months next preceding the date of the filing of the petition in bankruptcy, and that the only purpose was, and is, to secure a speedy and economical determination of the litigation between him and Clark in conformity to law.

Now without stopping to analyze the motives of the parties to this agreement, or consider the possible advantage, if any, which might accrue to any one else except Oscar A. Burton, by the waiver of the statute of limitations, their intentions are to be judged by the legal effect of their act. This is a familiar legal test, and has recently been applied by Judge Woodruff of this circuit in New York, in the case of Clark v. Bininger. When read in the light of the undeniable facts touching the condition of these parties, and especially the situation of Clark, on the eve of bankruptcy, with every dollar of his estate buried under repeated attachments, the object of this agreement is quite obvious. Burton had consented to a reversal of his judgment of forty-six thousand dollars, recovered by way of offset in the action of assumpsit brought by Clark against him, though I see no just grounds of complaint by Clark's creditors on this score. The reversal of that judg-

ment was insisted on by Clark's counsel, who are amongst his creditors, and by Clark himself, when he was, as the assignee now avers, resisting in good faith the alleged fraudulent claims of Burton, one of which was the demand upon which this judgment in offset was founded. Still that judgment had just been reversed, while the action of book account, with the attachment of one hundred and fifty thousand dollars, was still pending. As Burton was defendant in the action of assumpsit, and made his claims therein by way of offset, whatever he might recover in that suit, would be unsecured by any attachment. On the other hand, whatever he might legitimately recover as plaintiff in the action of book account, was already secured by his attachment in the latter suit, assuming that that attachment was a lien upon Clark's property, which the adjudication of the latter, as a bankrupt, could not dissolve. This agreement therefore was entered into, by which the assumpsit was to be abandoned, and all the claims which had been litigated therein, transferred to the action of book account, for the purpose of sheltering any sum that Burton might recover under the lien of that attachment. I have no hesitation in holding that such an agreement, entered into under the circumstances which undeniably existed, so far as it could, if carried out, change the relations of these parties, and control the litigation in its subsequent stages, is in fraud of the bankruptcy act, and an attempted invasion of the rights of the general creditors, of whom the assignee is the representative. I have no doubt on the proofs before me, that both Clark and Burton entered into this arrangement with a view to Clark's bankruptcy, and with the design of materially directing the future course of the litigation by placing certain features of it, at least, beyond the control of the assignee. It was consummated, not incautiously or ignorantly, but by Burton under the advice of counsel, and by Clark against the repeated and earnest protest of his legal advisers. In this view of the matter it is, I think, obvious that it is the duty of this court to grant some effectual relief against the use of this agreeement, and secure to the assignee the free and untrammelled exercise of all the rights which the bankruptcy act confers upon him, with reference to this litigation, whether in the prosecution or defence of suits, in which he has a clear right under the law to be substituted as a party in place of this bankrupt.

This brings me to the consideration of the prayer of the bill, and of the specific form and extent of the relief which can be granted. The prayer of the bill is simple and comprehensive. It asks, in effect, this court to restrain Oscar A. Burton from proceeding in any manner in the state courts, at least till after the question of the bankrupt's discharge is settled, and then that this court, by an issue to a jury or some other mode of trial,

proceed to settle and adjust the claims of Clark and Burton upon each other. If this course were authorized by law and practicable, it might prove an easy solution to some of the difficulties which present themselves in the case now before us. Passing now the question as to the power of the court to enjoin the defendant against proceeding at all (which will be considered hereafter), I apprehend that it has no authority to withdraw these cases from the state courts and proceed to their trial here. Congress could no doubt have made an adjudication in bankruptcy operate, proprio vigore, to withdraw all cases, in which the bankrupt should be a party, pending in the state courts in the district, at the time of filing the petition, from those tribunals, and transfer them into the district court. It has not, however, done so. It not only has not deprived the state courts of jurisdiction over such causes, but it has provided for their prosecution and defence in those courts by the assignee. The fourteenth section of the bankruptcy act [of 1867 (14 Stat. 517)] declares that the assignee "may sue for and recover said estate, debts and effects, and may prosecute and defend all suits at law or in equity, pending at the time of the adjudication of bankruptcy, in which such bankrupt is a party, in his own name, in the same manner and with like effect as they might have been prosecuted or defended by such bankrupt." The sixteenth section also provides for the substitution of the assignee as plaintiff, in place of the bankrupt. It is true that by the twenty-first section, proving a debt or claim by the creditor operates as an abandonment by him of right to maintain a suit against the bankrupt, or obtain satisfaction for a judgment already rendered. The same section also provides that no creditor whose debt is provable shall be allowed to prosecute to final judgment any suit at law or in equity therefor, against the bankrupt, until the question of the debtor's discharge shall have been determined. These two provisions of the twenty-first section are addressed as much to the state as to the United States courts. In re Rosenberg [Case No. 12,054]. There is a further provision in the same section addressed more particularly to the bankrupt court, providing for a stay of proceedings in suits upon the application of the bankrupt, until the question of his discharge is settled; provided there is no unreasonable delay on his part. But even here it is provided that by leave of the court in bankruptcy, the creditor may proceed to judgment for the purpose of ascertaining the amount due, but execution shall be stayed, as aforesaid. The power of the state courts to proceed with pending suits in cases where creditors have provable debts; but which they do not prove under the bankruptcy proceedings, under certain prescribed limitations is thus recognized by the bankruptcy act itself. The jurisdiction of the state courts is not extinguished, except in those cases where the

creditor proves his debt or claim. This very bill proceeds upon this view, and describes the suits of Clark and the Burtons and the Franklin County Bank, as now pending in the state courts. Congress has not provided that they shall be transferred to the district court, much less has it provided that the latter tribunal may proceed to determine the subject-matter of the suits pending in the state courts, by issues framed here to be tried by jury or in any other manner. That part of the prayer of the bill which invokes this mode of relief is therefore denied.

But it by no means follows that the bankrupt and a creditor are to be allowed, on the very eve of the debtor's bankruptcy, to enter into any arrangement by which they can control the course of litigation in the state courts, in suits there pending, to which the bankrupt is a party. The assignee has the right to be substituted as a party in place of the bankrupt, and he may, and in these cases should, exercise that right, and with the aid of counsel enforce and defend the rights of the creditors who have, through him as their representative, succeeded to whatever rights the bankrupt had prior to any truce or agreement which the latter may have entered into with Oscar A. Burton. To this end an injunction must issue against Oscar A. Burton, restraining him from using in any manner the agreement of 18th February, 1870, and, if necessary, an order will be placed on Clark, requiring him to execute such papers as will enable the assignee to appear in the cases in the state courts. I think, however, that the state courts are bound to admit him as a party in all the suits, in place of Clark, on production by him of his appointment as assignee, properly authenticated. Clark may also be enjoined from any further interference with the suits, beyond furnishing the assignee all the information in his possession which may be serviceable in the prosecution or defence of the claims in favor of or against the estate. This relief the court has the power, and it is its duty to grant.

The object of this agreement between Clark and Burton was to conclude the action of the assignee on material matters touching this litigation, and was thus in fraud of the bankruptcy act. By suppressing its use the assignee will be left free, and with the same means of attack or defence which he would have had, had the agreement never been concluded. The litigation in the state courts will stand where it did before the truce between Clark and Burton, except the discontinuance of the equity suit against Clark and Barlow, and the one of Clark v. Burton, and the reversal of the judgment of forty-six thousand dollars in favor of Burton against Clark. These acts have already been consummated, and this court has no power to reverse them. But if it had, I do not see what object the creditors could gain by a restoration of these chancery suits to the docket of the state courts, or what loss can accrue to the estate by their discontinuance beyond possibly a bill of costs. As to the reversal of the judgment of forty-six thousand dollars in favor of Burton, I do not, as I have already intimated, see any just ground of complaint by the assignee on that account, for the bill alleges in effect that that judgment was founded upon a fictitious and fraudulent claim.

But it is insisted that the great object of Oscar A. Burton is to bring his claims against Clark to judgment under the action of book account, and thus shelter them under the attachment lien in that suit, which covers all of Clark's property, and that this will allow him to thus obtain a preference over the rest of the creditors, and enable him to appropriate all the bankrupt's estate to the payment of his own claims, to the exclusion of all others. It is suggested that he will withdraw his plea or specification in offset from the action of assumpsit, wherein he has no security, and transfer them to his accounts on book, for adjustment in the book account action in which his heavy attachment was levied, and that the suppression of his unlawful agreement with Clark will not prevent this result. But the success of this scheme, as it is termed. must depend upon questions of law over which this court has no control, so far as those suits are concerned. Those actions are under the authority of the state court, which has jurisdiction of the parties and subject-matters, and it must determine the questions as they arise, according to law, subject to the final judgment of the supreme court of the United States, in case any right or claim is set up under any statute of the United States, and such right or claim is denied by the state tribunals. In no other way can its decision be reversed or revised.

If a clause of the bankruptcy act is drawn in question and a right or claim set up under it in the state court, it is bound by its authority, and if it disregards it, its judgment can be reversed. If the rules of law prevailing in Vermont forbid the transfer by Burton of the items once filed by way of offset in the suit in assumpsit to the book account action. the supreme court of the state will so decide when the plea in abatement already filed reaches them. If such a transfer is in fraud of the bankruptcy act, though not in conflict with the practice hitherto prevailing in the courts of the state, the bankruptcy act must prevail as the paramount law, and prevent the transfer. This being a matter which has arisen puis darrein continuance, it can still be set up by the assignee in the state court, and if the judgment of the latter be against the rights of the creditors under it, it can be subject to a writ of error taking the case from the supreme court of the state to the supreme court of the United States, the only court which has the power of reversing the final decision of the highest court of the state.

As to the exception taken to the ruling of the state court recommitting the book account suit to the auditors for further hearing, this court has nothing to do with that. If that ruling is subject to revision at all, it must be revised by the supreme court of the state.

The bill avers that Burton threatens to call out the auditors in the action of book account, and proceed to trial, and that it is necessary that the assignee have more time in order to properly prepare to defend that suit. This is a consideration proper to be addressed to the tribunal, before which that cause is pending. The assignee being substituted as a party in place of Clark, free from any of the odium which it is conceded attaches to him, will, as the representative of these innocent creditors, receive such protection and justice as the tribunals of the state of Vermont mete out to all its honest citizens, who resort to them for the enforcement or defence of their rights. That the state court will give this assignee full opportunity to prepare this and the other cases before he is required to proceed to trial, I cannot doubt, especially as he holds this large estate for the benefit of numerous bona fide creditors, an estate which is involved in a complicated litigation, and in this condition has just passed out of the hands of a man whom both parties denounce as a walking embodiment of fraud and villany, known and read of all men. But it is said that a stay of proceedings can be granted until the question of the debtor's discharge is determined. This claim rests upon the second and third clauses of the twenty-first section of the bankruptcy act. The second clause, as already stated, is addressed as much to the state courts as to those of bankruptcy. It prohibits them from allowing a creditor who holds a provable debt from prosecuting to final judgment any suit at law or in equity therefor against the bankrupt, until the question of the latter's discharge shall have been determined. The third clause is addressed more particularly to the courts of bankruptcy. It provides that the latter shall, upon the application of the bankrupt, stay any such suit until the determination of the question of discharge, provided the debtor does not unreasonably delay in endeavoring to obtain his discharge. This court may also, in its discretion, permit the creditor to proceed to judgment for the purpose of ascertaining the amount due, though execution must be stayed, as aforesaid. These provisions were intended for the protection of debtors. Here the debtor has made no application for a stay of proceedings. Still it is obvious, from these clauses of this section of the act, that this court has the power to stay the creditors from proceeding at all in the state court, until the question of discharge is determined. At least this power to stay is conferred by the act in terms. But the question arises whether its exercise is practicable in this case. Under the law as it now stands, the assets of the estate must pay fifty cents on the dollar, before the general question as to the debtor's right to a discharge can arise, unless a majority in number and value of his creditors proving their debts assent in writing. Whether the assets will reach this point cannot be determined until the amount due in the suits now pending against him is ascertained. It is true, that the debtor's estate is large, amounting to a hundred thousand dollars or more. But it is in proof, that in addition to some prior mortgages, the attachments on this property amount to two hundred and ninety-five thousand one hundred and fifty dollars, and it is a singular fact that the whole amount of these attachments, except sixteen hundred and fifty dollars, was levied on the property more than four months prior to the filing of the petition in bankruptcy. Some of these attaching creditors have proved their claims, and therefore surrendered their attachments. To what amount this has been done does not appear in the proofs. The claims under the attachments, if valid, appear to be provable debts, but so long as they are not proved, and the attachments thus abandoned, I assume them to be valid liens on the property attached, to the amount justly and legally due.

The amount due on these claims, upon which these existing suits are founded, cannot be ascertained, except by proof and adjustment in this court, or hearing in the state court. The extent of these debts must be ascertained somewhere. before the question of discharge can be passed upon by this court. This court cannot assume the validity or invalidity of these claims, or their extent. To stay the creditors, or any one of them having a large claim, from proceeding to ascertain the amount due till the question of discharge should be reached, might, and probably would, block the proceedings indefinitely, or until the stay were taken off. But, inasmuch as this court has no power to withdraw the litigation from the state court, to prohibit these defendants from proceding there to ascertain the amount due, until the question of the debtor's discharge could be reached and passed upon, would not, even if the embarrassments to which I have just referred did not exist, remove the main difficulty which the other creditors are seeking to avoid. In this aspect of the case their object is not merely to delay Burton's proceedings in the state court to ascertain the amount due, until the question of Clark's discharge is settled, but to prevent him from transferring to the action of book account the items which he has once litigated in the actions of assumpsit. The same difficulty would remain after the question of discharge was disposed of. This question of his right to transfer his account from one action to another. a mere question of law arising on indisputable facts, would still remain to be determined in that court where the actions are pending, and over

the parties and subject-matters of which that court has jurisdiction so long as Burton refrains from proving his debt here. The only course left for the other creditors to pursue in order to protect their rights in this particular, is for the assignee to appear in those suits, interpose the objection that the transfer would be in fraud of the bankruptcy act, have the objection made a part of the record, and if the decision is against him, remove the case to the supreme court of the United States for revision.

Of course, Burton or any other creditor can at any time be prohibited from taking out execution in the state court, and levying it upon the property attached. The assignee will have the right to free the estate from the attachment lien or liens, if that course becomes advisable, and this court can protect him in the exercise of that right, and interpose its authority at such time as may be most expedient or proper. It can be done now or hereafter.

I have assumed throughout that the attachments on this bankrupt property, which were levied more than four months prior to the filing of the petition in bankruptcy, were not dissolved by the adjudication, and except as to those that have been surrendered, are valid liens to the extent of the debts justly due the attaching creditors, and embraced in their suits. Though I do not intend now to formally decide this point, it is difficult for me to see how such a conclusion is to be avoided, in view of the first clause of the fourteenth section of the bankruptcy act (Park v. Jenness, 7 How. [48 U. S.] 612), especially as the latter contained the settled constructions of the act of 1841, when the present one was enacted.

As to the suits of the Franklin County Bank and Carlos C. Burton, and the suit of Oscar A. Burton for ten thousand dollars, I see nothing, either in the allegations of the bill or in the proofs adduced on the hearing, calling now for the interference of this court beyond restraining the plaintiffs therein from proceeding to take out execution in any cause for the amount that may be found due, until the assignee can have reasonable time to discharge the attachment liens, if he shall desire so to do. An injunction against each to that effect can issue now or at some future time, as may be most expedient.

But I do not fail to appreciate the gravity and importance of the questions involved in this case, both on account of the large interests at stake and the peculiar embarrassments under which the assignee may labor. And as one or both parties may, and doubtless will, seek a revision of this case in the circuit court, I will, in addition to a permanent injunction against the use of the agreement between Clark and Oscar A. Burton of the 18th of February, 1870, grant a stay of proceedings in all the cases referred to in the bill, until the questions involved can be determined in that court.

[On appeal to the circuit court, the decree of this court was affirmed. Case unreported. For subsequent proceedings in this litigation, see Cases Nos. 12,286, 2,801, and 2,802.]